IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

CONTINENTAL CARBON CO., INC.,   §
                                §
          Plaintiffs,           §
v.                              §      CIVIL ACTION NO. H-05-1187
                                §
AMERICAN INTERNATIONAL          §
SPECIALTY LINES INSURANCE CO.,  §
                                §
          Defendants.           §
                                §

## MEMORANDUM OPINION

Pending before the court[1] are 1) Plaintiff Continental Carbon
Company, Inc.'s Motion for Summary Judgment, Docket Entry No. 27,
and 2) Defendant American International Specialty Lines Insurance
Company's Cross-Motion for Summary Judgment, Docket Entry No. 31.
Also pending are Defendant's Motion to Strike Portions of the
Declaration of Clyde M. Hettrick and Exhibits M and N in support of
Plaintiff's Motion for Partial Summary Judgment (Docket Entry No.
32), Defendant's Motion to Strike Portions of Michael L. Ingram's
Declaration and Exhibits F, G, H, I, J, K, and L in support of
Plaintiff's Motion for Partial Summary Judgment (Docket Entry No.
33), Plaintiff's Motion to Strike Defendant's Summary Judgment
Evidence (Docket Entry No. 40), Defendant's Motion to Strike
Plaintiff's Response in Opposition (Docket Entry No. 44) and
Defendant's Motion to Strike "Tab 1" in support of Plaintiff's

_____

[1]     The parties consented to proceed before the undersigned magistrate
judge for all proceedings, including trial and final judgment, pursuant to 28
U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  Docket Entry No. 25.

Response to Defendant's Cross-Motion for Summary Judgment (Docket Entry No. 46).  The court has considered the motions, all relevant filings, and the applicable law.  For the reasons set forth below, Plaintiff's Motion for Summary Judgment is **GRANTED** and Defendant's Cross-Motion for Summary Judgment is **DENIED**.

## I.  Case Background

The dispute between the parties in this case concerns insurance coverage.  Continental Carbon Company, Inc. ("Plaintiff" or "Continental"), the insured, brought this action against American International Specialty Lines Insurance Company ("Defendant" or "AISLIC"), the insurer, seeking a declaration that Defendant had a duty to defend Plaintiff against three related lawsuits.  Defendant denies any contractual obligation to defend Plaintiff.

### A. The Underlying Lawsuits

Over the course of several months in 2002, Plaintiff was served with three lawsuits brought by the Paper, Allied-Industrial, Chemical and Energy Workers International Union ("PACE").[2]  The

---

[2]      Plaintiff Continental Carbon Company, Inc.'s Motion for Partial Summary Judgment ("Plaintiff's Partial Motion for Summary Judgment"), Docket Entry No. 27, Exhibit ("Ex.") C, Original Complaint (Civil Action No. 02-0175); Plaintiff's Partial Motion for Summary Judgment, Docket Entry No. 27, Ex. D, Original Complaint (Civil Action No. 02-1022); Plaintiff's Partial Motion for Summary Judgment, Docket Entry No. 27, Ex. E, Original Complaint (Civil Action No. 02-1677).  At the time PACE filed the lawsuits, Plaintiff and the union were engaged in a contentious labor dispute. American International Speciality Lines Insurance Company's Response in Opposition to Plaintiff Continental Carbon Company, Inc.'s Motion for Partial Summary Judgment and Cross-Motion for Summary Judgment ("Defendant's Response and Cross-Motion for Summary Judgment"), Docket Entry No. 31, p.4.  See also Defendant's Response and Cross-Motion for Summary Judgment"), Docket Entry No. 31, Ex. C, Defendant Continental Carbon Company's

2

first suit ("the Sunray Suit") was filed in the United States
District Court for the Northern District of Texas, and was related
to operations that allegedly took place at Plaintiff's carbon black
plant located in Sunray, Texas.[3]   PACE filed its second and third
suits ("the Ponca City Suit" and "the Ponca Tribe Suit,"
respectively) in the United States District Court for the Western
District of Oklahoma, alleging violations associated with
Plaintiff's carbon black plant in Ponca City, Oklahoma.[4]

Each complaint began by stating "[t]his is a citizen's suit,"
and each requested "a declaratory judgment, injunctive relief, the
imposition of civil penalties and the award of costs, including
attorneys' and expert witnesses' fees."[5]   The first two suits were
brought under Section 7002 of the Resource Conservation Recovery
Act ("RCRA"), 42 U.S.C. § 6972.[6]   The Ponca Tribe Suit was brought
under Section 505 of the Clean Water Act ("CWA"), 33 U.S.C. §

_____

Motion to Dismiss and Brief in Support, (Civil Action No. 02-1677), p. 2.

[3]      Plaintiff's Partial Motion for Summary Judgment, Docket Entry No. 27,
Ex. C, Original Complaint (Civil Action No. 02-0175).

[4]      Plaintiff's Partial Motion for Summary Judgment, Docket Entry No. 27,
Ex. D, Original Complaint (Civil Action No. 02-1022); Plaintiff's Partial Motion
for Summary Judgment, Docket Entry No. 27, Ex. E, Original Complaint (Civil
Action No. 02-1677).

[5]      Plaintiff's Partial Motion for Summary Judgment, Docket Entry No. 27,
Ex. C, Original Complaint (Civil Action No. 02-0175), p.1; Plaintiff's Partial
Motion for Summary Judgment, Docket Entry No. 27, Ex. D, Original Complaint
(Civil Action No. 02-1022), p.1; Plaintiff's Partial Motion for Summary Judgment,
Docket Entry No. 27, Ex. E, Original Complaint (Civil Action No. 02-1677), p.1.

[6]      Plaintiff's Partial Motion for Summary Judgment, Docket Entry No. 27,
Ex. C, Original Complaint (Civil Action No. 02-0175), p.1; Plaintiff's Partial
Motion for Summary Judgment, Docket Entry No. 27, Ex. D, Original Complaint
(Civil Action No. 02-1022), p.1.

1365.[7]

PACE's complaints filed in the Sunray Suit and the Ponca City Suit are substantially identical; almost every disparity between the two is attributable only to the difference in location at issue (e.g., references to the number of employees at each location, the appropriate venue to bring suit, the specific state agency contacted, etc.).[8] Both complaints claimed Plaintiff (1) accepted hazardous waste without proper permits, (2) accepted hazardous waste without proper records, (3) failed to properly manage hazardous waste, (4) failed to correctly determine if the waste generated at its plants was to be classified as hazardous, (5) failed to maintain required records related to hazardous waste, (6) improperly shipped hazardous waste, and (7) improperly disposed of hazardous waste.[9]  The Sunray Suit also claimed that Plaintiff managed waste disposal units without authorization, and operated an open dump without authorization.[10]  The Ponca City Suit further alleged that Plaintiff's Ponca City plant generated hazardous

[7]     Plaintiff's Partial Motion for Summary Judgment, Docket Entry No. 27, Ex. E, Original Complaint (Civil Action No. 02-1677), p.1.

[8]     See Plaintiff's Partial Motion for Summary Judgment, Docket Entry No. 27, Ex. C, Original Complaint (Civil Action No. 02-0175), p.1; See also Plaintiff's Partial Motion for Summary Judgment, Docket Entry No. 27, Ex. D, Original Complaint (Civil Action No. 02-1022), p.1.

[9]     See Plaintiff's Partial Motion for Summary Judgment, Docket Entry No. 27, Ex. C, Original Complaint (Civil Action No. 02-0175), p.5-8; See also Plaintiff's Partial Motion for Summary Judgment, Docket Entry No. 27, Ex. D, Original Complaint (Civil Action No. 02-1022), p.5-9.

[10]     Plaintiff's Partial Motion for Summary Judgment, Docket Entry No. 27, Ex. C, Original Complaint (Civil Action No. 02-0175), p.8-9.

wastes that were disposed of on-site and in the Ponca City municipal landfill.[11]

The first two complaints sought almost identical relief, with the exception of the references to location:

> WHEREFORE, [PACE] respectfully requests this [c]ourt to grant the following relief:
>
> [1.] Issue a declaratory judgment that [Continental] violated RCRA and [Texas's/Oklahoma's] solid waste statutes and regulations through unsafe, improper and unauthorized operation of Defendant's [Sunray/Ponca City] plant;
>
> [2.] Order [Continental] to pay penalties of from $50 to $25,000 per day per violation for each violation and each day of violation;
>
> [3.] Enjoin all disposal operations and set a compliance schedule for correction of all activities that result in any violation of RCRA or [Texas/Oklahoma] law or regulations authorized under RCRA;
>
> [4.] Award [PACE] its costs, including reasonable attorneys' and expert witness fees, as authorized by Section 7002 of RCRA, 42 U.S.C. § 6972(e); and
>
> [5.] Grant such other relief as the [c]ourt deems appropriate.[12]

The third (Ponca Tribe Suit) complaint was primarily based on allegations that Plaintiff improperly discharged wastewater from

---

[11]     Plaintiff's Partial Motion for Summary Judgment, Docket Entry No. 27, Ex. D, Original Complaint (Civil Action No. 02-1022), p.7.

[12]     Plaintiff's Partial Motion for Summary Judgment, Docket Entry No. 27, Ex. C, Original Complaint (Civil Action No. 02-0175), p.10; See also Plaintiff's Partial Motion for Summary Judgment, Docket Entry No. 27, Ex. D, Original Complaint (Civil Action No. 02-1022), 10.

its wastewater retention lagoons to the Arkansas River.[13]   The
complaint also alleged that Plaintiff knowingly misrepresented
facts on its 1998 wastewater permit application.[14]   PACE, a
plaintiff in all three suits, was joined in this complaint by The
Ponca Tribe, "an Indian nation [that] enjoy[s] a unique ancestral
relationship to both the land on which the [Plaintiff's] facility
sits . . . and to the Arkansas River."[15]

The request for relief in the Ponca Tribe Suit requested that
the court

> 1. Issue a declaratory judgment that [Continental]
> violated CWA and Oklahoma's solid waste and water quality
> statutes and regulations through the unsafe, improper and
> unauthorized operation of its Ponca City plant;
>
> 2. Order [Continental] to pay penalties from $50 to
> $25,000 per day per violation and for each day of
> violation;
>
> 3. Enjoin all unpermitted discharges and set a compliance
> schedule for correction of all activities that result in
> any violation of CWA or of Oklahoma law or regulations
> authorized under CWA;
>
> 4. Award [PACE and The Ponca Tribe] their costs,
> including reasonable attorneys' and expert witness fees,
> as authorized by 33 U.S.C. § 1365(d); and
>
> 5. Grant such other relief as the [c]ourt deems

---

[13]   See Plaintiff's Partial Motion for Summary Judgment, Docket Entry No.
27, Ex. E, Original Complaint (Civil Action No. 02-1677).

[14]   Plaintiff's Partial Motion for Summary Judgment, Docket Entry No. 27,
Ex. E, Original Complaint (Civil Action No. 02-1677), p.6-7.

[15]   Plaintiff's Partial Motion for Summary Judgment, Docket Entry No. 27,
Ex. E, Original Complaint (Civil Action No. 02-1677), p.3.

appropriate.[16]

In each complaint, PACE brought the action "on its own behalf and on the behalf of its adversely affected members," noting that "PACE has as one of its goals and roles in representing its members the protection of the members' health and safety."[17]   The first two suits alleged that members of PACE were exposed to hazardous materials at work, and that PACE members and their families were exposed to hazardous materials both at home and at other "off-site" locations.[18]   The Ponca Tribe Suit alleged that members of PACE and the Ponca Tribe "use the Arkansas River in the immediate downstream area of the Continental Carbon discharges for recreation, fishing, and watering livestock."[19]   It also noted that some Ponca Tribe members maintained "shallow water wells" near the river.[20]

## B. The Insurance Policies

Plaintiff purchased from Defendant two insurance policies that

---

[16]      Plaintiff's Partial Motion for Summary Judgment, Docket Entry No. 27, Ex. E, Original Complaint (Civil Action No. 02-1677), p.7-8.

[17]      Plaintiff's Partial Motion for Summary Judgment, Docket Entry No. 27, Ex. C, Original Complaint (Civil Action No. 02-0175),  p.3; Plaintiff's Partial Motion for Summary Judgment, Docket Entry No. 27, Ex. D, Original Complaint (Civil Action No. 02-1022), p.3; Plaintiff's Partial Motion for Summary Judgment, Docket Entry No. 27, Ex. E, Original Complaint (Civil Action No. 02-1677), p.2.

[18]      Plaintiff's Partial Motion for Summary Judgment, Docket Entry No. 27, Ex. C, Original Complaint (Civil Action No. 02-0175), p.3; Plaintiff's Partial Motion for Summary Judgment, Docket Entry No. 27, Ex. D, Original Complaint (Civil Action No. 02-1022), p.3

[19]      Plaintiff's Partial Motion for Summary Judgment, Docket Entry No. 27, Ex. E, Original Complaint (Civil Action No. 02-1677), p.3.

[20]      Plaintiff's Partial Motion for Summary Judgment, Docket Entry No. 27, Ex. E, Original Complaint (Civil Action No. 02-1677), p.3.

collectively covered applicable claims made from July 30, 2001, through July 30, 2003.[21]  All parties acknowledge that both policies included Plaintiff as a named insured, and agree that the policies covered Plaintiff's Sunray and Ponca City plants.[22]  Both policies stated that AISLIC "will have the right and duty to defend any claim seeking loss to which Coverage D-1 or D-2 applies.  However, [AISLIC] will have no duty to defend the insured against any claim for bodily injury, property damage, or clean-up costs to which Coverage D-1 or D-2 does not apply."[23]

Coverage D is related to pollution legal liability.  Coverage D-1 applies to third party claims for on-site bodily injury or property damage, while D-2 applies to third party claims for bodily injury, property damage, or clean-up costs that occur off-site. Under D-1 Coverage, Defendant committed that it

> will pay those sums that the insured becomes legally obligated to pay as **loss** because of **claims** in the **coverage territory** for **bodily injury** which takes place while the person injured is on the **insured property,** or for **property damage** to **personal property** of a third-party which takes place while such **personal property** is on the

---

[21]     Plaintiff's Partial Motion for Summary Judgment, Docket Entry No. 27, Ex. A, Policy No. EA61090493; Plaintiff's Partial Motion for Summary Judgment, Docket Entry No. 27, Ex. B, Policy No. EA6191930.

[22]     Plaintiff's Partial Motion for Summary Judgment, Docket Entry No. 27, p.9; Defendant's Response and Cross-Motion for Summary Judgment, Docket Entry No. 31, p.13.

[23]     Plaintiff's Partial Motion for Summary Judgment, Docket Entry No. 27, Ex. A, Policy No. EA61090493, Commercial General Liability and Pollution Legal Liability Coverages Form, p. 8; Plaintiff's Partial Motion for Summary Judgment, Docket Entry No. 27, Ex. B, Policy No. EA6191930, Commercial General Liability and Pollution Legal Liability Coverages Form, p. 8.

**insured property.** All of the following [requirements] must be satisfied for this Coverage D-1 to apply:

(1) The **bodily injury** or **property damage** results from **pollution conditions** on or under the **insured property** and such **pollution conditions** did not commence before the Retroactive Date, if any, shown in the Declarations or after the end of the **policy period**; and

(2) A **claim** for **bodily injury** or **property damage** is first made against the insured and reported to us, in writing, during the **policy period** or any **extended reporting period** we provide under EXTENDED REPORTING PERIODS (Section V).[24]

Under D-2 Coverage, Defendant committed that AISLIC

will pay those sums that the insured becomes legally obligated to pay as **loss** because of **claims** in the **coverage territory** for **bodily injury**, **property damage** or **clean-up costs** beyond the boundaries of the **insured property.** All of the following [requirements] must be satisfied for this Coverage D-2 to apply:

(1) The **bodily injury, property damage,** or **clean-up costs** result from **pollution conditions** on or under the **insured property** which have migrated beyond the boundaries of the **insured property**, and such **pollution conditions** did not commence before the Retroactive Date, if any, shown in the Declarations or after the end of the **policy period**; and

(2) A **claim** for **bodily injury**[,] **property damage,** or **clean-up costs** is first made against the insured and reported to us, in writing, during the **policy period** or any **extended reporting period** we provide under EXTENDED REPORTING PERIODS (Section V).[25]

---

[24] Plaintiff's Partial Motion for Summary Judgment, Docket Entry No. 27, Ex. A, Policy No. EA61090493, Commercial General Liability and Pollution Legal Liability Coverages Form, p. 8; Plaintiff's Partial Motion for Summary Judgment, Docket Entry No. 27, Ex. B, Policy No. EA6191930, Commercial General Liability and Pollution Legal Liability Coverages Form, p. 8.

[25] Plaintiff's Partial Motion for Summary Judgment, Docket Entry No. 27, Ex. A, Policy No. EA61090493, Commercial General Liability and Pollution Legal Liability Coverages Form, p. 8; Plaintiff's Partial Motion for Summary Judgment,

The policies also define certain related terms:

**Loss** as used in Coverage D-1 and D-2, means:

a. Monetary awards or settlements of compensatory damages arising from **bodily injury** or **property damage**;

b. Costs, charges and expenses incurred in the defense, investigation or adjustment of **claims** for such compensatory damages or for **clean[-]up costs**;

c. **Clean-up costs.**[26]

**Bodily injury** means, with respect to Coverages D-1 and D-2, physical injury, or sickness, disease, mental anguish or emotional distress sustained by any person, including death resulting therefrom. . . .

**Claim** means a written demand received by the insured seeking a remedy and alleging liability or responsibility on the part of the insured for compensatory damages under Coverage A or B, or **loss** under Coverage D-1 or D-2. **Claim** includes a **suit**. . . .

**Clean-up costs** means expenses, including reasonable and necessary legal expenses incurred with [AISLIC's] written consent, incurred in the investigation, removal, remediation or disposal of soil, surfacewater, groundwater or other contamination:

a. Which have been incurred by the government or any political subdivision of the United States of America, any state thereof, or Canada or any province thereof; or by a third party; or

---

Docket Entry No. 27, Ex. B, Policy No. EA6191930, Commercial General Liability and Pollution Legal Liability Coverages Form, p. 8.

[26]    Plaintiff's Partial Motion for Summary Judgment, Docket Entry No. 27, Ex. A, Policy No. EA61090493, Commercial General Liability and Pollution Legal Liability Coverages Form, p. 22; Plaintiff's Partial Motion for Summary Judgment, Docket Entry No. 27, Ex. B, Policy No. EA6191930, Commercial General Liability and Pollution Legal Liability Coverages Form, p. 22.

b. To the extent required by **environmental laws,** or specifically mandated by court order, the government or any political subdivision of the United States of America, any state thereof, or Canada or any province thereof, duly acting under the authority of **environmental laws. . . .**

**Coverage territory** [under Coverages D-1 and D-2 means] **Claims** arising from **pollution conditions** in the United States, its territories or possessions or Canada and only if such **claims** are made or brought in the United States, its territories or possessions or Canada. . . .

**Environmental laws** means any applicable federal, state, provincial or local law pursuant to which you have or may have a legal obligation to incur **clean-up costs. . . .**

**Pollution conditions** means the discharge, dispersal, release or escape of **pollutants** into or upon land, or any structure on land, the atmosphere or any watercourse or body of water, including groundwater, provided such conditions are not naturally present in the environment. . . .

**Property damage** means, with respect to Coverages D-1 and D-2:

c. Physical injury to or destruction of a tangible property of parties other than the insured including the resulting loss of use or value thereof; or

d. Loss of use of, but not loss of value [of], tangible property of parties other than the insured that has not been physically injured or destroyed.

**Property damage** does not include clean-up costs.[27]

---

[27]     Plaintiff's Partial Motion for Summary Judgment, Docket Entry No. 27, Ex. A, Policy No. EA61090493, Commercial General Liability and Pollution Legal Liability Coverages Form, p. 20-24; Plaintiff's Partial Motion for Summary Judgment, Docket Entry No. 27, Ex. B, Policy No. EA6191930, Commercial General Liability and Pollution Legal Liability Coverages Form, p. 20-24.

## C. The Decision Not To Defend

According to Plaintiff, Defendant initially indicated that AISLIC considered defending Plaintiff against the PACE lawsuits.[28] After receiving timely notice of the lawsuits, Defendant sent letters to Plaintiff's counsel advising them of Defendant's "defense counsel guidelines," and explained that AISLIC's "objective is to ensure that a quality and cost-effective defense is given to our insured."[29] On February 24, 2003, though, Defendant notified Plaintiff that Plaintiff was not entitled to coverage for the Sunray or Ponca City suits.[30] By April 29, 2003, Defendant also denied coverage for the Ponca Tribe suit.[31]

Plaintiff sent several letters to Defendant attempting to explain, in great detail, why the lawsuits triggered Defendant's duty to defend under the insurance policies.[32] Defendant maintained that the allegations in the PACE lawsuits were not covered by the Plaintiff's insurance policies, and refused to defend Plaintiff in

---

[28]    Plaintiff's Partial Motion for Summary Judgment, Docket Entry No. 27, p.12.

[29]    Plaintiff's Partial Motion for Summary Judgment, Docket Entry No. 27, Ex. F, August 21, 2002 Letter from AIGTS to Haynes Boon.

[30]    Plaintiff's Partial Motion for Summary Judgment, Docket Entry No. 27, Ex. I & J, February 24, 2003 Letters from AIGTS to Plaintiff.

[31]    Plaintiff's Partial Motion for Summary Judgment, Docket Entry No. 27, Ex. K, April 29, 2003 Letter from Jackson & Campbell to AIGTS.

[32]    Plaintiff's Partial Motion for Summary Judgment, Docket Entry No. 27, Ex. M, April 21, 2004 Letter from Pasich & Kornfeld, LLP to AIGTS; Plaintiff's Partial Motion for Summary Judgment, Docket Entry No. 27, Ex. N, September 8, 2003 Letter from Pasich & Kornfeld, LLP to AIGTS.

the underlying suits.[33]

## II.  Legal Standards

This case is properly before the court on the basis of diversity jurisdiction.  The parties agree that Texas law applies to their controversy.[34]  Absent any indication in the record that another state's law should apply, the court will apply Texas law.

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Brown v. City of Houston, Tex.</u>, 337 F.3d 539, 540-41 (5th Cir. 2003).  A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party.  <u>Id</u>. at 250.

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits

---

[33]    <u>See</u> Plaintiff's Partial Motion for Summary Judgment, Docket Entry No. 27; <u>See also</u> Defendant's Response and Cross-Motion for Summary Judgment, Docket Entry No. 31.

[34]    <u>See</u> Plaintiff's Partial Motion for Summary Judgment, Docket Entry No. 27; <u>See also</u> Defendant's Response and Cross-Motion for Summary Judgment, Docket Entry No. 31.

that demonstrate the absence of genuine factual issues. <u>Celotex Corp.</u>, 477 U.S. at 323; <u>Topalian v. Ehrman</u>, 954 F.2d 1125, 1131 (5th Cir. 1992).   If the moving party can show an absence of record evidence in support of one or more elements of the case for which the nonmoving party bears the burden, the movant will be entitled to summary judgment. <u>Celotex Corp.</u>, 477 U.S. at 322.   In response to a showing of lack of evidence, the party opposing summary judgment must go beyond the pleadings and proffer evidence that establishes each of the challenged elements of the case, demonstrating that genuine issues of material fact do exist which must be resolved at trial. <u>Id.</u> at 324.

When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party." <u>Evans v. City of Houston</u>, 246 F.3d 344, 348 (5th Cir. 2001); <u>see also</u> <u>Boston Old Colony Ins. Co. v. Tiner Assocs. Inc.</u>, 288 F.3d 222, 227 (5th Cir. 2002).   The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence." <u>Honore v. Douglas</u>, 833 F.2d 565, 567 (5th Cir. 1987).

### III.   Analysis

The parties disagree as to whether Defendant had a duty to defend Plaintiff in the three PACE lawsuits.   Plaintiff asserts that the pleadings gave rise to the Defendant's duty to defend. Defendant responds that the pleadings did not allege facts that

14

triggered possible coverage under the policies. Defendant also asserts that Plaintiff's current arguments are barred under the doctrine of judicial estoppel. Finally, the parties disagree as to the admissibility of certain extrinsic evidence. The court will review each argument in turn.

**A. Duty to Defend**

Texas law is clear that an insurer's duty to defend and its duty to indemnify are separate duties, and an insurer may have a duty to defend even when it has no duty to indemnify. Farmers Tex. County Mut. Ins. Co. v. Griffin, 955 S.W.2d 81, 82 (Tex. 1997). That is to say, allegations raised against the insured may fit within the policy coverage and trigger a duty to defend even if a subsequent finding negates the insurer's duty to indemnify. Id. However, if the factual allegations in an underlying complaint fall outside the policy coverage, neither duty is triggered. See id. at 84.

When contemplating whether the underlying litigation triggers policy coverage, the court examines the factual allegations in the complaint and the language of the insurance policy. See Malone v. Scottsdale Ins. Co., 147 F. Supp. 2d 623, 627, 629 (S.D. Tex. 2001) (applying Texas law); Griffin, 955 S.W.2d at 82. Known as the "eight corners rule" or the "complaint allegation rule," this method requires that the court "focus on the factual allegations rather than the legal theories asserted in reviewing the underlying

15

petition." <u>Malone</u>, 147 F. Supp. 2d at 627; <u>see also</u> <u>American</u> <u>States Ins. Co. v. Bailey</u>, 133 F.3d 363, 369 (5th Cir. 1998); <u>Mid-Continent Cas. Co. v. Safe Tire Disposal Corp.</u>, 16 S.W.3d 418, 421 (Tex. App.–Waco 2000, pet. denied).  The court need not decide the truth of the allegations to determine whether the facts are excluded by the insurance policy.  <u>E & L Chipping Co., Inc. v. Hanover Ins. Co.</u>, 962 S.W.2d 272, 275 (Tex. App.—Beaumont 1998, no pet.).  The court then compares the factual allegations with the terms of the insurance policy.

When reviewing the policy terms, the court employs general rules of contract construction.  <u>Balandran v. Safeco Ins. Co. of Am.</u>, 972 S.W.2d 738, 740-41 (Tex. 1998).  Absent any ambiguity, the meaning imparted by the contract language can be decided as a matter of law.  <u>Utica Nat'l Ins. Co. of Tex. v. Fidelity & Cas. Co. of N.Y.</u>, 812 S.W.2d 656, 661 (Tex. App.–Dallas 1991, writ denied).  Further, determining whether an ambiguity exists in the policy rests in the hands of the court.  <u>Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus.</u>, 907 S.W.2d 517, 520 (Tex. 1995).

To the extent possible, all provisions within the contract are read together and each is given effect so that no part of the agreement is left without meaning.  <u>Balandran</u>, 972 S.W.2d at 741.  The parties' intentions are to be considered only to the extent that they are evident within the document as a whole.  <u>Id.</u>  The wording of a contract is unambiguous if it can be given a definite

16

or certain legal meaning. <u>CBI Indus., Inc.</u>, 907 S.W.2d at 520. If the contract is subject to only one reasonable interpretation, it is unambiguous, and the court will not consider extrinsic evidence to vary or explain the terms of the policy, but will construe the policy according to the plain meaning of the words. <u>Id.</u>; <u>Puckett v. United States Fire Ins. Co.</u>, 678 S.W.2d 936, 938 (Tex. 1984); <u>Carrabba v. Employers Cas. Co.</u>, 742 S.W.2d 709, 714 (Tex. App.–Houston [14th Dist.] 1987, no writ).

However, if, and only if, the court finds an ambiguity in the contract provisions, particularly in exclusionary clauses, the court should construe the policy strictly against the insurer. <u>Bailey</u>, 133 F.3d at 369; <u>Balandran</u>, 972 S.W.2d at 741; <u>Puckett</u>, 678 S.W.2d at 938. In fact, if the insured's construction of an exclusionary provision is reasonable, it must be adopted, even if the insurer's construction is more reasonable. <u>Bailey</u>, 133 F.3d at 369; <u>Toops v. Gulf Coast Marine, Inc.</u>, 72 F.3d 483, 486 (5th Cir. 1996)(applying Texas law); <u>Balandran</u>, 972 S.W.2d at 741. The burden of proving that coverage is barred by an exclusionary provision is borne by the insurer. <u>Bailey</u>, 133 F.3d at 369.

Texas adheres strictly to the "eight-corners rule," and calls on courts to resolve any "doubt as to whether the complaint states a covered cause of action . . . in the insured's favor." <u>Cullen/Frost Bank of Dallas v. Commonwealth Lloyd's Ins. Co.</u>, 852 S.W.2d 252, 255 (Tex. App.—Dallas 1993, writ denied).

Additionally, in "determining whether the allegations in the underlying petition fall within the provisions of the insurance policy, [the court will] indulge a liberal interpretation of the meaning of those allegations." Id.

Plaintiff asserts that the factual allegations in the three lawsuits trigger Defendant's duty to defend.  Defendant contends that policy coverage applied only to "pollution-related claims for (1) compensatory damages for bodily injury, (2) compensatory damages for property damage, and (3) clean-up costs."[35]  Defendant also states that since "there are no allegations of compensatory damages arising from 'bodily injury' or 'property damage,' or claims for 'clean-up costs' in any of the lawsuits," the claims cannot be within the scope of Plaintiff's coverage.[36]

Plaintiff does not seem to dispute Defendant's summary of the policies' applicability requirements, and the court agrees that in order to trigger Defendant's duty to defend, the factual allegations in the underlying complaints must have the potential to lead to damages arising from bodily injury or property damage, or claims for clean-up costs.

## 1. Bodily Injury

Under the insurance policies, "bodily injury" is defined as

---

[35]    Defendant's Response and Cross-Motion for Summary Judgment, Docket Entry No. 31, p.19.

[36]    Defendant's Response and Cross-Motion for Summary Judgment, Docket Entry No. 31, p.2, 20.

"physical injury, or sickness, disease, mental anguish or emotional distress sustained by any person, including death resulting therefrom."[37]

In its motion for summary judgment, Plaintiff stated that the "PACE plaintiffs . . . alleged bodily injury to PACE members, their families, PONCA Tribe members and others."[38] Defendant admits that the complaints alleged that Plaintiff's "unauthorized management of its on-site disposal units with hazardous wastes interred constitutes an imminent and substantial endangerment to human health and the environment, and create[s] risks of exposure to members of PACE and their families," but then asserts that "it is logically impossible" for the complaints to trigger damages for bodily injury because "[a]s a matter of common sense, a group entity such as a union or nation cannot experience 'bodily injury.'"[39]

Plaintiff does not challenge Defendant's reasoning that "[b]odily injury is confined to those [who] have bodies, *i.e.,* human beings," and the court agrees that neither PACE nor the Ponca Tribe requested compensatory damages for bodily injury or had

---

[37]     Plaintiff's Partial Motion for Summary Judgment, Docket Entry No. 27, Ex. A, Policy No. EA61090493, Commercial General Liability and Pollution Legal Liability Coverages Form, p. 20; Plaintiff's Partial Motion for Summary Judgment, Docket Entry No. 27, Ex. B, Policy No. EA6191930, Commercial General Liability and Pollution Legal Liability Coverages Form, p. 20.

[38]     Plaintiff's Partial Motion for Summary Judgment, Docket Entry No. 27, p.19.

[39]     Defendant's Response and Cross-Motion for Summary Judgment, Docket Entry No. 31, p.7, 21.

standing to assert claims for damages associated with bodily injury.[40]   Therefore, Defendant's duty to defend could not be triggered under the bodily injury component of the policies.

### 2. Property Damage

The insurance policies defined "property damage" as:

Physical injury to or destruction of a tangible property of parties other than the insured including the resulting loss of use or value thereof; or . . .

Loss of use of, but not loss of value [of], tangible property of parties other than the insured that has not been physically injured or destroyed.[41]

The policies also specified that "property damage" did not include clean-up costs.[42]

In its motion for summary judgment, Plaintiff claimed that "the PACE lawsuits are replete with assertions of property damage through contamination of the surface and groundwater at or near the plants."[29]   Again, Defendant does not specifically disagree that allegations of property damage were made, but does assert that

---

[40]     Defendant's Response and Cross-Motion for Summary Judgment, Docket Entry No. 31, p.7, 21.

[41]     Plaintiff's Partial Motion for Summary Judgment, Docket Entry No. 27, Ex. A, Policy No. EA61090493, Commercial General Liability and Pollution Legal Liability Coverages Form, p. 23-24; Plaintiff's Partial Motion for Summary Judgment, Docket Entry No. 27, Ex. B, Policy No. EA6191930, Commercial General Liability and Pollution Legal Liability Coverages Form, p. 23-24.

[42]     Plaintiff's Partial Motion for Summary Judgment, Docket Entry No. 27, Ex. A, Policy No. EA61090493, Commercial General Liability and Pollution Legal Liability Coverages Form, p. 24; Plaintiff's Partial Motion for Summary Judgment, Docket Entry No. 27, Ex. B, Policy No. EA6191930, Commercial General Liability and Pollution Legal Liability Coverages Form, p. 24.

[29]     Plaintiff's Partial Motion for Summary Judgment, Docket Entry No. 27, p.19.

neither PACE nor the Ponca Tribe made any claim to own or have any property interest in property affected by Plaintiff's alleged conduct.[30]  Without such an allegation of property ownership within the four corners of the complaints, the PACE and Ponca Tribe allegations do not trigger a claim for property damage.

### 3. Clean-Up Costs

Finally, Plaintiff contends that the three lawsuits potentially gave rise to claims for clean-up costs.  Plaintiff notes that at least one suit specifically recognized the possibility of claims for "a groundwater remediation program for sites with groundwater contamination caused by a release or discharge of hazardous waste or hazardous waste constituents."[31] Plaintiff also notes that the prayer in each case specifically requested that the court "set a compliance schedule for correction of all activities that result in any violation of" the law.[32] Plaintiff asserts that these facts, "on their face, establish a

---

[30]     Defendant's Response and Cross-Motion for Summary Judgment, Docket Entry No. 31, p.7, 25-26.

[31]     Plaintiff's Partial Motion for Summary Judgment, Docket Entry No. 27, Ex. C, Original Complaint (Civil Action No. 02-0175), Appendix A, p.3.  The court notes Defendant's objection to Plaintiff's assertion that PACE "suggested" the imposition of a groundwater remediation program, but also finds that the correspondence attached to PACE's Original Complaint indicates PACE was aware that RCRA violations could result in a clean-up program.

[32]     Plaintiff's Partial Motion for Summary Judgment, Docket Entry No. 27, Ex. C, Original Complaint (Civil Action No. 02-0175), p.10; Plaintiff's Partial Motion for Summary Judgment, Docket Entry No. 27, Ex. D, Original Complaint (Civil Action No. 02-1022), p.10; Plaintiff's Partial Motion for Summary Judgment, Docket Entry No. 27, Ex. E, Original Complaint (Civil Action No. 02-1677), p.7.

claim for clean[-]up costs as defined in the AISLIC policies."[33]

Under Coverage D-2, the insurance policies provided that Defendant must indemnify Plaintiff for "claims for clean-up costs beyond the boundaries of the insured property. . . [that] result from pollution conditions on or under the insured property which have migrated beyond the boundaries of the insured property."[34] "Clean-up costs" are defined as

> expenses, including reasonable and necessary legal expenses incurred with [AISLIC's] written consent, incurred in the investigation, removal, remediation or disposal of soil, surfacewater, groundwater or other contamination:
>
> a. Which have been incurred by the government or any political subdivision of the United States of America, any state thereof, or Canada or any province thereof; or by a third party; or
>
> b. To the extent required by **environmental laws,** or specifically mandated by court order, the government or any political subdivision of the United States of America, any state thereof, or Canada or any province thereof, duly acting under the authority of **environmental laws. . . .**[35]

---

[33]     Plaintiff Continental Carbon's Response to Aislic's Cross-Motion For Summary Judgment and Reply in Support of its Motion for Partial Summary Judgment ("Plaintiff's Response"), Docket Entry No. 41, p.6.

[34]     Plaintiff's Partial Motion for Summary Judgment, Docket Entry No. 27, Ex. A, Policy No. EA61090493, Commercial General Liability and Pollution Legal Liability Coverages Form, p. 8; Plaintiff's Partial Motion for Summary Judgment, Docket Entry No. 27, Ex. B, Policy No. EA6191930, Commercial General Liability and Pollution Legal Liability Coverages Form, p. 8.

[35]     Plaintiff's Partial Motion for Summary Judgment, Docket Entry No. 27, Ex. A, Policy No. EA61090493, Commercial General Liability and Pollution Legal Liability Coverages Form, p. 20; Plaintiff's Partial Motion for Summary Judgment, Docket Entry No. 27, Ex. B, Policy No. EA6191930, Commercial General Liability and Pollution Legal Liability Coverages Form, p. 20.

Defendant contends that Plaintiff "is unable to identify any allegation in the complaints asserting a claim for expenses incurred in the investigation, removal, remediation or disposal of certain contamination to the extent required by 'environmental laws' or specifically mandated by court order, the government, any political subdivision of the United States, or any state."[36] Defendant admits, though, that the underlying lawsuits asked the court to set a compliance schedule, and asserts that such a compliance schedule is "forward-looking" and cannot be a demand for clean-up, but merely for future compliance with the law.[37]

Regarding the Ponca Tribe Suit, Defendant primarily bases this assertion on the U.S. Supreme Court's interpretation of the Clean Water Act in <u>Gwaltney v. Chesapeake Bay Foundation.</u> 484 U.S. 49 (1987). In <u>Gwaltney</u>, two environmental groups brought a citizen's suit under the CWA against a company, alleging that the company violated its National Pollutant Discharge Elimination System (NPDES) permit.  <u>Id.</u>  The company moved for dismissal of the suit, arguing that the CWA required complaints to allege current violations of the CWA.  <u>Id.</u>  Noting the present-tense language of the CWA, the Court held that the act did not confer federal jurisdiction to citizen's suits for wholly past violations, but

---

[36]     Defendant's Response and Cross-Motion for Summary Judgment, Docket Entry No. 31, p.2.

[37]     Defendant American International Specialty Lines Insurance Company's Reply in Support of its Cross-Motion for Summary Judgment ("Defendant's Reply"), Docket Entry No. 47, p.3-4.

that good-faith allegations of ongoing violations were actionable. Id.

Here, Defendant over-reads Gwaltney to prohibit clean up of past pollution as a potential remedy in citizen suits. As Plaintiff correctly explained, Gwaltney focused on a jurisdictional test.[38] Gwaltney said nothing that suggested the remedies available in a CWA citizen's suit were limited. In fact, Plaintiff was able to demonstrate at least one instance where a court reasonably held that mandated clean-up could be an equitable remedy under the CWA.[39] The First Circuit Court of Appeals also held that remediation is a remedy available under the CWA. United States Pub. Interest Research Group v. Atl. Salmon of Me., 339 F.3d 23, 31 (1st Cir. 2003) ("Nothing in [the CWA] language precludes, as part of this enforcement authority, measures remediating the harm caused by an existing violation, nor have we been cited to any legislative history or circuit precedent imposing such a limitation.").

In the Ponca Tribe Suit, the plaintiffs did allege ongoing, continuous violations of the CWA, and therefore met the Gwaltney

---

[38]    Plaintiff Continental Carbon's Surreply in Support of its Motion for Summary Judgment and in Opposition to AISLIC's Cross Motion for Summary Judgment ("Plaintiff's Surreply"), Docket Entry No. 52, p.3. See Gwaltney v. Chesapeake Bay Foundation, 484 U.S. 49 (1987).

[39]    Plaintiff's Response, Docket Entry No. 41, p. 9, citing United States v. Alcoa Inc., 98 F. Supp. 2d 1031, 1039 (N.D. Ind. 2000) ("Therefore, the Court concludes that the court's authority to grant an injunction 'to require compliance' in Section 309(b) [of the CWA] is broad enough to include the mandated clean up of contaminated sediments . . . .").

jurisdictional test.[40]   Once past that threshold, the possibility existed that a court could have imposed clean-up costs on Plaintiff to address continuing violations.   Thus, the court must now determine if those clean-up costs would potentially qualify for coverage under Coverage D-2.   The court finds that they would.

In order to apply Coverage D-2, clean-up costs must "result from pollution conditions on or under the insured property which have migrated beyond the boundaries of the insured property."[41]   The Ponca Tribe suit alleged discharges of contaminated water to the Arkansas River and stated that Continental's "berm or dike on one [of] its retention lagoons has also been breached, with resulting offsite discharges" of pollutants.[42]   The court finds these allegations potentially implicated coverage under the policies, and therefore triggered Defendant's duty to defend.

Because the Sunray and Ponca City suits are brought under RCRA instead of the CWA, Gwaltney's jurisdictional test is not an issue. See Gwaltney, 484 U.S. 49.   Defendant admits that the operative

---

[40]     Plaintiff's Partial Motion for Summary Judgment, Docket Entry No. 27, Ex. E, Original Complaint (Civil Action No. 02-1677), p.1 ("Plaintiff alleges that Defendant has violated and continues to violate the CWA through the unsafe, improper and unauthorized operation of its Ponca City carbon black plant in Kay Count, Oklahoma.").

[41]     Plaintiff's Partial Motion for Summary Judgment, Docket Entry No. 27, Ex. A, Policy No. EA61090493, Commercial General Liability and Pollution Legal Liability Coverages Form, p. 8; Plaintiff's Partial Motion for Summary Judgment, Docket Entry No. 27, Ex. B, Policy No. EA6191930, Commercial General Liability and Pollution Legal Liability Coverages Form, p. 8.

[42]     Plaintiff's Partial Motion for Summary Judgment, Docket Entry No. 27, Ex. E, Original Complaint (Civil Action No. 02-1677), p.5.

RCRA provisions are notably different from those in the CWA, and acknowledges that "broader, backward-looking relief is available under RCRA."[43]   Defendant contends, though, that PACE did not specifically request in its complaint that the compliance schedules include an order for remediation or clean-up.[44]

While the court does not agree that clean-up costs should be classified as only "backward-looking" relief, the court agrees with Defendant that clean-up costs are an obviously-available potential remedy for RCRA violations.   Additionally, courts' actual willingness to impose clean-up costs on RCRA violators is demonstrated in several cases cited by Plaintiff.[45]

The Fifth Circuit has held that for the duty to defend to arise under Texas law, the pleadings must only allege a claim that is *potentially* covered by the insurance policy.   <u>Gulf States Ins.</u>

---

[43]   Defendant's Reply, Docket Entry No. 47, p.6-7.   <u>See</u>, <u>e.g.</u>, 42 USCS § 6972 ("Except as provided in subsection (b) or (c) of this section, any person may commence a civil action on his own behalf- . . . against any person, including the United States and any other governmental instrumentality or agency, to the extent permitted by the eleventh amendment to the Constitution, and including any **past** or present generator, **past** or present transporter, or **past** or present owner or operator of a treatment, storage, or disposal facility, who **has contributed** or who is contributing to the **past** or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment. . . ." **(emphasis added)**).

[44]   Defendant's Reply, Docket Entry No. 47, p.6.

[45]   Plaintiff's Response, Docket Entry No. 41, p. 9; <u>See</u>, <u>e.g.</u>, <u>Meghrig v. KFC Western, Inc.</u>, 516 U.S. 479, 484 (1996) ("Under a plain reading of this remedial scheme, a private citizen suing under [RCRA] could seek a mandatory injunction, i.e., one that orders a responsible party to 'take action' by attending to the cleanup and proper disposal of toxic waste . . . ."; <u>Express Car Wash Corp. v. Irinaga Bros.</u>, 967 F. Supp. 1188, 1192 (D. Or. 1997) ("[P]laintiff facing an imminent threat from hazardous waste, when no remediation has yet taken place, clearly can sue under RCRA for an injunction to force appropriate parties to clean up the contamination.").

26

Co. v. Alamo Carriage Serv., 22 F.3d 88, 90 (5th Cir. 1994).  "As
long as the plaintiff has potentially asserted a claim that lies
within the coverage of the policy, the insurance carrier is under
an obligation to defend the insured."  Gibson & Assocs. v. Home
Ins. Co., 966 F. Supp. 468, 472 (N.D. Tex. 1997); See also National
Union Fire Ins. Co. v. Merchants Fast Motor Lines, 939 S.W.2d 139,
141 (Tex. 1997); Founders Commer., Ltd. v. Trinity Universal Ins.
Co., 176 S.W.3d 484, 488 (Tex. App.—Houston [1st Dist.] 2004).
Also, the court finds that a liberal reading of PACE's requests for
"injunctive relief" and "a compliance schedule for correction of
all activities that result in any violation . . ." easily implies
an appeal for court-ordered remediation and clean-up as allowed
under RCRA.

Here too, clean-up costs must "result from pollution
conditions on or under the insured property which have migrated
beyond the boundaries of the insured property," in order to trigger
indemnification under Coverage D-2.[46]  In the Sunray Suit, PACE
alleged that hazardous wastes from the insured property
contaminated ground or surface waters, air, and food.[47]  The
complaint also alleged that hazardous materials are "released from

---

[46]    Plaintiff's Partial Motion for Summary Judgment, Docket Entry No. 27,
Ex. A, Policy No. EA61090493, Commercial General Liability and Pollution Legal
Liability Coverages Form, p. 8; Plaintiff's Partial Motion for Summary Judgment,
Docket Entry No. 27, Ex. B, Policy No. EA6191930, Commercial General Liability
and Pollution Legal Liability Coverages Form, p. 8.

[47]    Plaintiff's Partial Motion for Summary Judgment, Docket Entry No. 27,
Ex. C, Original Complaint (Civil Action No. 02-0175), p.9.

the facility" and carried off-site by attaching to employees'
clothes.[48]   In the Ponca City Suit, PACE again submitted that
hazardous materials are "released from the facility" and travel to
employees' "homes and other off-site locations."[49]

While the court recognizes these allegations only barely
connote pollution conditions which have migrated off-site, Texas
law clearly holds that "factual allegations in a third party's
complaint must be liberally construed in favor of the insured."
St. Paul Fire & Marine Ins. Co. v. Green Tree Fin. Corp.-Texas, 249
F.3d 389, 392 (5th Cir. 2001) (citing Texas law).   The Fifth
Circuit also has held that in "case of doubt as to whether or not
the allegations of a complaint against the insured state a cause of
action within the coverage of a liability policy sufficient to
compel the insurer to defend the action, such doubt will be
resolved in insured's favor." Allstate Ins. Co. v. Disability
Servs. of the Southwest, Inc., 400 F.3d 260, 263 (5th Cir. 2005)
(quoting National Union Fire Ins. Co. v. Merchants Fast Motor
Lines, 939 S.W.2d 139, 141 (Tex. 1997)). See also Heyden Newport
Chem. Corp. v. Southern Gen. Ins. Co., 387 S.W.2d 22, 26 (Tex.
1965).

After considering the plain reading of all three pleadings,

---

[48]   Plaintiff's Partial Motion for Summary Judgment, Docket Entry No. 27,
Ex. C, Original Complaint (Civil Action No. 02-0175), p.3.

[49]   Plaintiff's Partial Motion for Summary Judgment, Docket Entry No. 27,
Ex. D, Original Complaint (Civil Action No. 02-1022), p.3.

the applicable insurance policies, and Defendant's admissions, it is clear that the factual allegations in each complaint potentially gave rise to clean-up costs within the scope of Coverage D-2. Additionally, it is clear that Texas law obligates an insurer "to defend an insured as long as the complaint alleges at least one cause of action within the policy's coverage." <u>Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.</u>, 99 F.3d 695, 701 (5th Cir. 1996); <u>See also</u> <u>Allstate Ins. Co.</u>, 400 F.3d at 263; <u>Rhodes v. Chicago Ins. Co.</u>, 719 F.2d 116, 119 (5th Cir.1983). Therefore, the court finds as a matter of law that Defendant had a duty to defend Plaintiff in each of the underlying lawsuits.

**B. Judicial Estoppel**

Defendant asserts that Plaintiff "should be estopped from putting forth arguments of bodily injury and property damage at this time, as [they are] in direct contradiction to the arguments it proffered in the federal courts hosting the underlying actions."[50]  As explained above, the court does not find that Defendant had any duty to defend Plaintiff on the basis of claims for bodily injury or property damage, and therefore, does not reach the issue of judicial estoppel.

**C. Extrinsic Evidence**

Each party discussed in their motions the admissibility of

---

[50]    Defendant's Response and Cross-Motion for Summary Judgment, Docket Entry No. 31., p.31.

certain extrinsic evidence and each has moved to strike certain portion of opposing motions for summary judgment as improperly considered by the court in determining the present issue before the court.   The Fifth Circuit has been clear that Texas strictly follows the eight corners rule, and recently held that the Fifth Circuit "Court makes its <u>Erie</u> guess that the current Texas Supreme Court would not recognize **any** exception to the strict eight corners rule." <u>Northfield Ins. Co. v. Loving Home Care, Inc.</u>, 363 F.3d 523, 531 (5th Cir. 2004) **(emphasis added)**.   While the court accepts the "unlikely situation that the Texas Supreme Court [may] recognize an exception to the strict eight corners rule," it is clear that no such exception applies in the instant case.   <u>Id.</u> at 531.

As explained above, the four corners of the pleadings clearly alleged facts stating a cause of action which potentially fell within the four corners of the policies' scope of coverage. Therefore, the court had no need to consider extrinsic evidence and did not consider such evidence.   The pending motions to strike (Docket Entry Nos. 32, 33, 40, 44, and 46) are **DENIED** as moot.

## IV.  Conclusion

For all of the foregoing reasons, the court finds that, as a matter of law, Defendant had a duty to defend Plaintiff against each of the three PACE lawsuits.

Therefore, the court **GRANTS** Plaintiff's Motion for Summary

30

Judgment and **DENIES** Defendant's Cross-Motion for Summary Judgment.

SIGNED at Houston, Texas, this 23rd day of May, 2006.

Nancy K. Johnson
United States Magistrate Judge